CHARLES A. QUILICO, Plaintiff, v. UNION OIL COMPANY OF CALIFORNIA et al., Defendants.—(UNION OIL COMPANY OF CALIFORNIA, Third-Party Plaintiff-Appellee, v. THOMAS REED & SONS, INC., Third-Party Defendant-Appellant.)

Third District No. 77-201

Opinion filed February 9, 1978.

James E. Garrison, of O'Brien and Garrison, of Joliet, for appellant.

D. Kendall Griffith and Alan H. Swanson, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
This is an appeal by Thomas Reed & Sons, Inc., a third-party defendant in the above cause. It appeals from the entry of summary judgment in the third-party action against it by Union Oil Company of California, as third-party plaintiff. Judgment was entered in the sum of $128,000 as against defendant Thomas Reed & Sons, Inc.

The action from which the present appeal stems was commenced in the circuit court of Will County against defendants Union Oil Company of California (hereinafter called "Union") and Pure Oil Corporation to recover damages under the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, pars. 60-69) for personal injuries sustained by Charles A. Quilico, as plaintiff. Defendant Union then filed the third-party action involved in this appeal, based upon three theories, namely, (1) contractual indemnity, (2) implied indemnity and (3) equitable apportionment, all for indemnity against the third-party defendant Thomas Reed & Sons, Inc. (hereinafter called "Reed"). Following a jury trial, plaintiff Quilico received a verdict in his favor as against Union in the sum of $128,000. The third-party action against Reed then resulted in entry of summary judgment against Reed for the same sum.

The record discloses that a Union refinery was located in Lemont, Illinois, which was damaged by fire in July of 1970. Since Union did not have either the equipment or manpower to make the necessary repairs, Union contracted with various companies for completion of the repair work. Union and Reed contracted for performance by Reed of the electrical portion of the repair work. On July 18, 1970, plaintiff Quilico, an employee of Reed, was working at the Union refinery on the repairs referred to. Quilico received daily work assignments and orders from his foreman, Fred Robinson, an employee of Reed, and while Quilico was on the job at the Union plant, Quilico never took orders of any kind from anyone other than Robinson, acting on behalf of Reed.

On July 18, 1970, plaintiff Quilico and two other Reed employees, Winsor and McGill, were removing and replacing conduit at the Union site. Winsor and McGill were standing on a steel rack, approximately 12 to 20 feet above the ground, which served as a support for pipes and conduit, while Quilico was kneeling on the ground underneath the pipe rack tying a rope to a section of conduit so that Winsor could raise the rope and conduit to the pipe rack. No one else was in the vicinity. A pipewrench which was owned by Reed and which had been used by the Reed employees earlier in the day, fell and struck plaintiff Quilico in the head. It appears that just before the wrench fell, it was laying on the rack upon which Winsor and McGill were standing, and that Winsor and McGill were at that time climbing over and through pipes so that they could hoist the conduit which Quilico was tying to the rope. Immediately after the accident, Winsor said that he hit the wrench with his foot.

As we have noted, Quilico commenced his action against Union to recover damages for personal injuries suffered in the July 18, 1970, accident. The complaint sought recovery solely under the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, pars. 60-69), and generally alleged that Union, being the owner of the premises and in charge of the work

then in progress, had willfully violated the Structural Work Act by failing to institute adequate safety measures while the repair work was in progress. After Union had filed a motion to strike and dismiss the Quilico complaint, Union answered the complaint. Union thereafter filed its third-party complaint against Reed. Pursuant to Reed's motion, the circuit court, on April 12, 1976, severed the third-party action from plaintiff Quilico's cause for purposes of trial. Trial of Quilico's action commenced on September 27, 1976, and the verdict was returned, as we have indicated, on October 1, 1976, in favor of Quilico and against defendant Union, and judgment was entered on that verdict.

Union's third-party complaint, as amended on October 12, 1976, sought indemnification from Reed for the judgment entered in Quilico's action on theories of contractual indemnity, implied indemnity and equitable apportionment, as we have noted. On October 12, 1976, Union moved for summary judgment on its third-party complaint, and in support thereof attached a copy of the contract between Union and Reed and portions of the testimony given in the trial of Quilico's cause. The contract between Union (designated "company") and Reed (designated "contractor") provided in relevant part:

"(2) Contractor agrees to perform such work, generally doing or causing to be done all things necessary therefore [*sic*], including, without being limited thereto, the furnishing of all labor, supervision, materials, equipment, supplies, construction tools, and construction equipment (except such items of materials and equipment as Company might furnish).
✿ ✿ ✿"

Under "General Conditions" appears the following:

"ARTICLE II—PERFORMANCE OF WORK
All work shall be performed in a good and workmanlike manner, and shall conform to the best standard practice for the type of work involved and where care, skill and precision are required, only competent journeymen shall be employed. Contractor shall exercise due diligence and take all reasonable precautions in the performance of the work and in the inspection of materials, machinery, equipment and workmanship entering into the work.
ARTICLE III—INSPECTION AND ACCEPTANCE OF WORK
1. Company shall have the right, but not the obligation, to inspect the work during the preparation or progress thereof, and Contractor shall provide proper access for such inspection.
✿ ✿ ✿

ARTICLE IV—SUPERVISION AND REPRESENTATION
1. Contractor or a competent representative of Contractor shall give constant personal attention to the work, and shall at all times

be readily available for contact by Company's representative regarding performance of the work. Contractor shall immediately report to Company's representative any error, inconsistency or omission which Contractor observes or discovers in the prosecution of the work.

✿ ✿ ✿

ARTICLE VII—INDEPENDENT STATUS OF CONTRACTOR
In the performance of all the work, Contractor shall be an independent contractor. Neither Contractor nor any persons employed by Contractor or any subcontractor for the work shall be deemed to be employees or agents of Company.

✿ ✿ ✿

ARTICLE IX—COMPLIANCE WITH LAWS
Contractor shall comply with the Fair Labor Standards Act and all other Federal, State and/or Municipal laws, regulations and ordinances in the performance of the work.

✿ ✿ ✿

ARTICLE XXI—INDEMNITY
Contractor shall indemnify and save Company harmless from any liability for damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, including the employees and agents of Contractor; and for injury or destruction of property, including property of Company, Contractor and others, and also including the loss of use thereof, arising directly or indirectly out of or in connection with any work or service performed or to be performed by Contractor, his agents, servants or subcontractors for Company, whether due in whole or in part to the negligence, active or passive, of Contractor, his agents, servants or subcontractors."

Also attached in support of Union's motion for summary judgment was testimony of Fred Robinson, Charles Reed (president of Reed), Winsor, plaintiff Quilico, Walter Munch (an electrical engineer employed by Union), and William Heilman (a safety consultant), given in the trial of Quilico's cause. After considering briefs submitted by both Union and Reed, the circuit court on November 22, 1976, granted Union's motion for summary judgment in the third-party action and entered judgment in favor of Union and against Reed in the amount of $128,000.

■■ On appeal Reed argues that the circuit court erred in granting summary judgment in favor of Union on the third-party complaint, asserting and contending that this was not a proper case for summary judgment on the theory that genuine issues of material fact exist. The Illinois Supreme Court stated the test for determining the propriety of

summary judgment action in *Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 141-42, 355 N.E.2d 1:

> "In *Econo Lease, Inc. v. Noffsinger*, 63 Ill. 2d 390, 393, we said: 'A motion for summary judgment will be granted if the pleadings, depositions, admissions and affidavits on file reveal that there is no genuine issue as to any material fact and that the movant is entitled to a judgment or decree as a matter of law. (Ill. Rev. Stat. 1975, ch. 110, par. 57(3); *Carruthers v. B. C. Christopher & Co.*, 57 Ill. 2d 376.) A reviewing court must reverse an order granting summary judgment if it is determined that a material question of fact does exist.' "

As further stated by the Illinois Appellate Court for the First District in *Century Display Manufacturing Corp. v. D. R. Wager Construction Co.* (1st Dist. 1977), 46 Ill. App. 3d 643, 648, 360 N.E.2d 1346:

> "Summary judgment proceedings ascertain whether a genuine issue as to any material fact exists and, should such an issue be uncovered, the motion should not be granted. [Citation.] The propriety of granting the motion is determined from a study of the pleadings, answers to interrogatories, depositions, and affidavits which are on filed [*sic*]. [Citation.] Affidavits in support of a motion for summary judgment should be strictly construed and must leave no question as to the movant's right to judgment, whereas, the opposing party's counteraffidavits should receive a liberal construction. [Citation.] The purpose of the proceeding is not to try an issue of fact and, although inferences may be drawn from undisputed facts, the motion should be granted only where reasonable men could not draw divergent inferences from those undisputed facts. [Citation.]"

In count I of its amended third-party complaint, Union sought indemnification from Reed upon the indemnity clauses contained in the contract between them. The contractual indemnity clause (which is quoted above substantially in full) provides in relevant part:

> "Contractor shall indemnify and save Company harmless from any liability for damages because of bodily injury * * *, sustained by any person * * *, including the employees * * * of Contractor, * * * arising directly or indirectly out of or in connection with any . work or service performed or to be performed by Contractor, his agents, servants or subcontractors for Company, whether due in whole or in part to the negligence, active or passive, of Contractor, his agents, servants or subcontractors."

The summary judgment granted by the circuit court against Reed rested in part on the conclusion of the court that Union was entitled to indemnification specifically under this contractual provision.

■■ Reed now contends that the indemnity clause is not sufficient to support recovery by Union in a situation where damages are occasioned by Union's own negligence. We note, however, that there was no adjudication in Quilico's action (which was based solely on the Structural Work Act), and no allegation in either Quilico's action or in Union's third-party action against Reed, that Union was in any manner negligent as regards the circumstances of Quilico's accident or that any such negligence by Union in any manner caused Quilico's accident. It is additionally noted that plaintiff Quilico's cause of action arose, and the Union-Reed contract was entered into prior to the enactment of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1975, ch. 29, par. 61), which voids as against public policy construction contract covenants purporting to indemnify a person against his own negligence.

With regard to the construction of indemnification agreements, the Illinois Supreme Court stated in *Zadak v. Cannon* (1974), 59 Ill. 2d 118, 120-21, 319 N.E.2d 469:

"In *Westinghouse Electric Elevator Co. v. La Salle Building Corp.* (1946), 395 Ill. 429, we were called upon to construe a contract containing an indemnity clause wherein the contractor agreed to hold harmless an owner against liability arising out of the acts of the contractor, or his agents, in the course of the work to be done under the contract. Under the clause there considered, we had to determine if the owner were entitled to indemnity from liability resulting from his own negligence. On pages 432 and 433, we stated:

'It is a general rule governing the construction of contracts that unless a contract is ambiguous, its meaning must be determined from the words used; and courts will not, because a more equitable result might be reached thereby, construe into the contract provisions that are not therein. [Citation.] In construing a contract which purports on its face to be a complete expression of the entire agreement, courts will not add thereto another term, about which the agreement is silent.'

In *Westinghouse*, we concluded that the language in the contract agreeing to indemnity was specifically limited to acts or omissions of the contractor or his agents. We refused to read into the contract language requiring the contractor to indemnify the owner against the latter's own negligence, and at page 433, we further stated: 'It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the

contract [citations], or such intention is expressed in unequivocal terms.'

*Westinghouse* does not say that an indemnity agreement may not be entered into: all it requires is that to accomplish this purpose there should be explicit language or an unequivocal expression of intent.

Recently, in *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, we had occasion to reaffirm the general rules of *Westinghouse* set forth above. * * *

We also noted in *Tatar* that it served no useful purpose to attempt to analyze or reconcile the numerous cases interpreting indemnity clauses. Each depends upon the particular language used and the factual setting of the case. 'The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions.' *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67."

The Illinois Supreme Court again reaffirmed the *Westinghouse* rule in *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.

The Illinois Appellate Court for the First District had occasion to consider an issue similar to that presented in the instant case in *Nogacz v. Procter & Gamble Manufacturing Co.* (1st Dist. 1975), 37 Ill. App. 3d 636, 347 N.E.2d 112, where the court, after discussing *Westinghouse, Tatar* and *Zadak*, stated at 37 Ill. App. 3d 636, 648-49:

"In *Zadak* the court recognized the futility of attempting to reconcile the numerous cases interpreting indemnity clauses, and said that each case depends on its particular *facts* and the *language* used in the agreement. In each of the cited cases [*Westinghouse, Tatar* and *Zadak*] the indemnitee sought indemnification for injury caused by his own employee's negligence. In the matter before us, however, the *facts* indicate that the indemnitor, * * * [the third-party defendant], was responsible for the scaffold on which its own employee was injured, and the *language* used in the indemnity agreement, on a fair reading, indicates that it was the intention of these parties to include a claim based on these facts. It has been held that the primary object in construing an indemnity agreement is to give effect to the intention of the parties. As stated in *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886:

'Their intent must be determined solely from the language used when no ambiguity in its terms exists, and a

strict construction of that language which reaches a different result from that intended by the parties should not be adopted. *Schiro v. Gould & Co.*, 18 Ill. 2d 538.' " (Emphasis in original.)

■■ In the instant case we find no ambiguity in the terms of the indemnity provision. Reed contracted to indemnify Union "from any liability for damages because of bodily injury * * * arising directly or indirectly out of or in connection with any work or service * * * to be performed by * * * [Reed], whether due in whole or in part to the negligence, active or passive, of * * * [Reed], his agents, servants or subcontractors." Giving effect to all phrases of the indemnity clause, as we are required to do in the proper construction of the instrument (*Valerio v. R & R Construction Co.* (5th Dist. 1974), 20 Ill. App. 3d 48, 312 N.E.2d 713), we conclude that it was the intention of the parties that Reed indemnify Union for any bodily injury liability arising directly or indirectly out of Reed's performance of work under the contract, if such liability arose, in whole or in part, due to the fault of Reed, its agents or employees.

Union's motion for summary judgment was supported by a copy of the agreement between Union and Reed and by portions of the testimony pertinent to the issue at the trial of Quilico's cause. It is undisputed that Quilico, Winsor, and McGill were Reed employees, and that Quilico took orders only from Robinson, also a Reed employee. It is also undisputed that no kickplate or catch platform was present at the time of the accident to prevent tools and materials from falling to the ground from the pipe rack from which the pipewrench fell or was kicked. The contract provided that Reed would provide: "all labor, supervision, materials, equipment, supplies, construction tools, and construction equipment (except such items of materials and equipment as Company [Union] might furnish)." It is undisputed that Union did not undertake or furnish either a kickplate or catch platform. Reed further covenanted to: "exercise due diligence and take all reasonable precautions in the performance of the work" and to "give constant personal attention to the work." Under the contract, Union had: "the right, but not the obligation, to inspect the work * * *." It is further noted that Reed agreed to "comply with * * * all * * * State laws * * * in the performance of the work," and that this covenant must include promise of compliance with the Structural Work Act, under which Union was held liable to Quilico.

■■ In opposition to Union's motion for summary judgment, Reed filed affidavits indicating that in the construction field, it is a custom and practice for the owner or person in charge of work and occupying the position of general contractor to provide for the manner of the erection of scaffolding for definite phases of work to be done. Reed argues that under

this custom and practice, it was Union's responsibility to provide the necessary protective devices as required under the Structural Work Act. We note that the custom referred to applied to organizations in the construction business and that Union was not in the construction business. The contract between Union and Reed clearly provides that Reed was to furnish all "materials, equipment, supplies, construction tools, and construction equipment (except such items and equipment as Company [Union] *might* furnish)." (Emphasis supplied.) It unambiguously appears that under this clause, Union was not required to furnish any construction tools or equipment, and that Reed was thereunder required to furnish all necessary tools and equipment not furnished by Union. As stated in *Perlman v. First National Bank* (1st Dist. 1973), 15 Ill. App. 3d 784, 794, 305 N.E.2d 236:

> "The general rule provides that 'if the terms or provisions of a written contract are in any way uncertain or ambiguous, parol evidence of a custom or usage is admissible to explain them or aid in their interpretation and construction. Where the meaning of such terms is unambiguous and free from doubt, a custom or usage cannot be proved to explain the terms or provisions.' (ILP Customs and Usages, §8; *Ambarann Corp. v. Old Ben Coal Corp.*, 395 Ill. 154, 165, 69 N.E.2d 835; *Fifteenth Ave. Christian Church v. Moline Heat.*, 131 Ill. App. 2d 766, 265 N.E.2d 405.)"

In view of the fact that the terms in the instant contract unambiguously and clearly require Reed to furnish all equipment and tools not furnished by Union, and do not require Union to furnish any equipment or tools, we conclude that the evidence of custom and practice submitted by Reed cannot be used to vary these terms of the written contract.

■■ We conclude that Union was entitled to summary judgment on the basis of the record before the court and based primarily on the contractual indemnification provision in the third-party action. As we have noted, it is undisputed that safety devices as required under the Structural Work Act were not provided by Reed and that Reed agreed to provide all necessary tools and equipment not provided by Union and that Reed further agreed to perform all work with due diligence, taking all reasonable precautions and complying with all laws (including the Structural Work Act). It is also undisputed that Quilico was a Reed employee, as were all persons in the area at the time of the accident, and that Quilico and Winsor took orders only from Robinson, a Reed employee and foreman. Under such circumstances and under the language of the particular indemnity provision viewed in the light of the support for the motion for summary judgment, Reed clearly had a contractual obligation to indemnify Union, and the trial court properly entered summary judgment on the basis of contractual indemnity.

We note, also, that the court also entered summary judgment against Reed on the theory of implied indemnity and determined that the critical prerequisites for imposition of noncontractual implied indemnity are met in this case. We note, as stated in *Prater v. Luhr Brothers, Inc.* (5th Dist. 1977), 51 Ill. App. 3d 685, 691-92, 366 N.E.2d 399:

> "Although it is not uncommon in Illinois for a trial court to contemporaneously consider claims for indemnity based on both common law and contract [citation], no case has been cited, nor have we found any, in which indemnification was permitted under both theories. The reason is apparent. Recovery under a contract providing for indemnity obviates any right to recover under the common law theory of implied indemnity since by such an express contract the parties have already themselves determined how and under what circumstances losses shall be allocated. In *Booth-Kelly Lumber Co. v. Southern Pacific Co.* (9th Cir. 1950), 183 F.2d 902, 906-07, the court in considering the effect of a contract covering indemnity, stated:
>
>> 'We also agree with the court below that the question of liability is not to be determined under any common law obligation apart from the contract. We think it is important to examine the rules of the common law in order more accurately to determine the meaning of the written contract. * * * But, since the parties have themselves dealt with the question of indemnity in their written contract, we think it is fair to say that they intended it, rather than some general common law rule, to govern their rights and liabilities in this situation.' "

We agree with the analysis by the court in the *Booth-Kelly Lumber Co.* case and conclude that the parties in the instant case have dealt with the question of indemnity in the written contract and that the right to recover based on the theory of implied indemnity need not be considered in view of the determination of this court.

■■■ It is significant to note that in this case the undisputed facts disclose that Union was exposed to liability under the Structural Work Act by the conduct of Reed and its employees alone, in which conduct Union did not join. An owner who has contracted to have repair work done on his property may be "in charge of" the work even though he exercised no control over the manner in which the contractor performed that work, and he may be liable under the Structural Work Act for violations of the Act by the contractor if the owner knew, or in the exercise of ordinary care could have discovered, the contractor's violation. An owner is deemed to be "in charge of" work being done by a contractor insofar as a claimant's position is concerned under the Structural Work Act, but where

a specific contract of the nature we have before us is involved, a contractor such as Reed is held to the terms of the contract of indemnity and is required to indemnify the owner for the full amount of the obligation which was imposed on the owner by the conduct of Reed. Reed's president, in testifying in the case, stated that it was Reed's obligation to determine the need for and provide the necessary scaffolds. Nothing in the record would establish a liability on the part of Union, independent of the action of Reed and Reed employees.

■■ The third theory which Union had advanced in support of the third-party action against Reed involved the doctrine of equitable apportionment, which we believe is not pertinent to the disposition of this cause. While this case was pending, the supreme court of this State in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, indicated that it is moving in the direction of abolition of the judicially created rule of noncontribution among joint tortfeasors, and adopted a rule of limited contribution among joint tortfeasors. It is clear, however, that the *Skinner* doctrine is not applicable to the instant case, which involves a specific indemnity agreement, indemnifying against negligence of the contractor-indemnitor, and, also, for the reason that the *Skinner* opinion is binding only prospectively by its terms. There is, therefore, no basis for remandment arising from consideration of *Skinner* or its companion cases which were determined by the supreme court during the pendency of this appeal.

For the reasons stated, therefore, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.