JOHN R. HIGGINS *et al.*, Plaintiffs-Appellants, *v.* ANGELO C. KLERONO-MOS, Defendant-Appellee.

First District (5th Division)   No. 82—2699

Opinion filed January 20, 1984.—Rehearing denied February 28, 1984.

Patrick L. Moore, of O'Keefe, Ashenden, Lyons & Ward, of Chicago, for appellants.

Patrick J. Phillips, of Jenner & Block, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs appeal from an order granting defendant's motion to dismiss their complaint under section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(9)) in which they sought to enforce a written indemnification agreement for brokerage commission and fees.

In their appeal plaintiffs argue that the trial court erred in granting defendant's motion because (1) the claims upon which indemnification was sought were specifically provided for by the indemnity clause of the contract, and (2) the court erred in considering defendant's affirmative defense, which had been stricken in the primary lawsuit brought against plaintiffs by third-party real estate brokers claiming fraud and breach of contract, and in which plaintiffs had expended $17,028 in attorney fees and defense costs.

The facts material to our decision are as follows: On February 6, 1980, defendant entered into a contract to purchase certain real estate known as River Forest Garden Apartments in River Forest, Illinois, from a seller for whom plaintiffs were brokers. Paragraph 4C of this contract contained the following indemnity provision:

"Purchaser agrees to indemnify and hold Seller, Preston A. Higgins & Co., Inc. and John R. Higgins, free and harmless from and against:

(1) all claims for brokerage commissions or fees and/or finder's fees made by any person or entity (including but not limited to Salk, Ward & Salk, Henry Gendell, Irving Spector, Herman Kole and Irving Rosenfeld) claiming (a) to have been retained by Purchaser or his agent or affiliates in connection with this transaction or the Property, or (b) to be the procuring cause of this transaction, provided that such person or entity was not retained by Seller;

(2) any damage, loss, cost or expense (including, but not limited to, attorney's fees and costs) incurred in connection with

or arising out of any claim for brokerage commissions or fees and/or finder's fees, as set forth in subparagraph 4(c)(1) hereof or any inaccuracy in or breach of any representation of Purchaser set forth in this Contract.

Purchaser's obligations under this paragraph 4C shall survive the Closing."

On October 20, 1980, following consummation of the real estate transaction, two third-party real estate brokers, Henry Gendell and Irving Spector filed an action against plaintiffs and four other named defendants, including the defendant in the case at bar. Count VI of their complaint alleged that the third-party brokers' "extensive and valuable brokerage services were procured from them on the part of [plaintiffs], in that [plaintiffs] continued to represent that there were no other brokers involved in pending offers *** [and that plaintiff] *** failed to disclose his interest as a broker in the sale and failed to disclose his ownership interest in the subject property." An amended complaint added a breach of contract claim based on an alleged oral brokerage commission contract between Gendell, Spector and plaintiffs. A second amended complaint again charged the plaintiffs with fraud. Subsequently, the trial court granted plaintiffs' motions to dismiss the complaint for failure to state a cause of action, and plaintiffs unsuccessfully sought indemnification from defendant for the $17,028 attorney fees and costs incurred in their defense in the primary suit.

On July 9, 1982, plaintiffs brought suit to enforce the indemnification agreement. Defendant moved to dismiss the complaint under section 2—619(a)(9) of the Illinois Code of Civil Procedure, arguing that the indemnity provision did not include coverage against a claim of fraud or a claim based on any contract between plaintiffs and the third-party brokers, and further argued that even assuming, *arguendo*, that the provision was applicable, it was unenforceable as against public policy.

In granting defendant's motion, the trial court stated as the reasons for its ruling:

"I would hold that the language, all claims for brokerage commissions or fees and/or finder's fees, et cetera, does not intend to indemnify against fraudulent acts. There is no specific inclusion of that intent in the agreement; and even if there was, it would be contrary to public policy and unenforceable. Therefore, I'm going to grant the motion to dismiss."

Plaintiffs appeal from the order of dismissal.

OPINION

Initially, we consider whether the trial court erred by granting defendant's motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619). This section provides for dismissal of a complaint by a trial court upon a defendant's motion supported by affidavit showing "[t]hat the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(9).

This reference to "affirmative matter" which avoids or defeats the opponent's claim supports the interpretation that this subparagraph was intended to provide only for the raising of affirmative defenses (*Brewer v. Stovall* (1977), 54 Ill. App. 3d 261, 264, 369 N.E.2d 365); however, the phrase "affirmative matter" does not include every statement of evidentiary fact which tends to negate the allegations of the complaint. (*Brewer v. Stovall* (1977), 54 Ill. App. 3d 261, 266, 369 N.E.2d 365.) Moreover, a section 2—619 motion admits, for the purpose of the motion, the facts well-pleaded in the complaint. *Loughman Cabinet Co. v. C. Iber & Sons, Inc.* (1977), 46 Ill. App. 3d 873, 361 N.E.2d 379.

With the foregoing legal principles in mind, we now turn to consider plaintiffs' primary argument that the claims for which indemnity was sought were legitimate contingencies validly covered by the indemnity provision. Defendant urges that we adopt the opposite conclusion and contends that the indemnity clause does not apply to the fraud and breach of contract claims brought against them by the third-party brokers in the primary suit.

An indemnity contract or contract provision is construed like any other contract (*National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 355 N.E.2d 43). In construing an indemnification agreement the court is bound to give effect to the intention of the parties determined solely from the language used when no ambiguity exists. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.) In a leading case on the construction of indemnification agreements, *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604, superseded by statute as stated in *Long v. Bucyrus-Erie Co.* (1983), 112 Ill. App. 3d 578, 445 N.E.2d 934, our supreme court stated that "courts will not, because a more equitable result might be reached thereby, construe into the contract provisions that are not therein. [Citation.] In construing a contract which purports on its face to be a complete expression of the entire agreement, courts will not add thereto another term, about

which the agreement is silent." (*Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 432-33.) The *Westinghouse* court went on to hold that "an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract [citations] or such intention is expressed in unequivocal terms."[1] 395 Ill. 429, 433.

These general rules established in *Westinghouse* have been consistently reaffirmed by the supreme court. (*Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272; *Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469; *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.) In *Tatar*, the supreme court further noted that it would serve no useful purpose to attempt to analyze, distinguish or reconcile the numerous cases interpreting indemnity clauses because the provisions involved are so varied, and each case will therefore depend upon the particular language used, and the factual setting of the case. The *Tatar* court noted: "The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions." *Tatar v. Maxon Construction Co.* (1975), 54 Ill. 2d 64, 67, 294 N.E.2d 272, 273-74.) *Accord, Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469; *Simone Corp. v. Builders Architectural Products* (1975), 28 Ill. App. 3d 595, 598, 328 N.E.2d 723.

In *Nogacz v. Procter & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636, 347 N.E.2d 112, the court again considered whether an indemnity clause was sufficient to support recovery in a situation where damages were occasioned by the indemnitor's own negligence. After discussing *Westinghouse, Tatar* and *Zadak*, the court stated: "In *Zadak* the court recognized the futility of attempting to reconcile the numerous cases interpreting indemnity clauses, and said that each case depends on its particular *facts* and the *language* used in the agreement. In each of the cited cases [*Westinghouse, Tatar* and *Zadak*] the indemnitee sought indemnification for injury caused by his own employee's negligence. In the matter before us, however, the *facts* indicate that the indemnitor *** was responsible for the scaffold on which its own employee was injured and the *language* used in the

---

[1]We note here that this rule still applies to indemnity provisions not covered by section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1979, ch. 29, par. 61), which prohibits construction contract indemnity agreements. *Long v. Bucyrus-Erie Co.* (1983), 112 Ill. App. 3d 578, 445 N.E.2d 934.

indemnity agreement, on a fair reading, indicates that *it was the intention of these parties to include a claim based on these facts.*" (Emphasis added.) 37 Ill. App. 3d 636, 648; see also *Quilico v. Union Oil Co.* (1978), 58 Ill. App. 3d 87, 374 N.E.2d 219.

Hence, it is clear that the primary object in construing an indemnity agreement is to give effect to the intention of the parties (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886) and since this intent must be determined solely from the language used when no ambiguity in its terms exists, a strict construction of that language which reaches a different result from that intended by the parties should not be adopted. *Schiro v. W. E. Gould & Co* (1960), 18 Ill. 2d 538, 165 N.E.2d 286.

■■ With the foregoing principles in mind, we find no ambiguity to exist in the terms of the indemnity provision in the present case. The contract provided for indemnification from and against "*all* claims" (emphasis added) for brokerage commissions or fees and expressly included the names of the third party brokers, Gendell and Spector, who subsequently brought suit. In light of the fact that the language of the indemnity provision unambiguously and clearly requires defendant to indemnify plaintiffs against all claims for brokerage commissions, we must conclude that it was the intention of the parties that defendant indemnify plaintiffs under the facts of the case.

We next consider defendant's contention that plaintiffs are precluded from enforcing the indemnity agreement because it is not applicable to the fraud claim brought against them for public policy reasons.

■■ A *prima facie* case of fraud is established by allegations that the wrongdoer knowingly misrepresented a material fact for the purpose of inducing the claimant to act, that the claimant reasonably believed the misrepresentation to be true, and that he detrimentally relied upon it. (*Northwest Federal Savings & Loan Association v. Weisberg* (1981), 97 Ill. App. 3d 470, 422 N.E.2d 1101.) Fraud must be pleaded with specificity, particularity and certainty. (*Goetz v. Avildsen Tool & Machines, Inc.* (1980), 82 Ill. App. 3d 1054, 403 N.E.2d 555.) Thus, in order to constitute fraud, it is not enough that the party made a false promise not intending to keep it; the total facts must show a scheme or device to defraud. (*Baker, Bourgeois & Associates, Inc. v. Taylor* (1980), 84 Ill. App. 3d 909, 410 N.E.2d 55.) Consequently, a party has not properly alleged fraud unless he has set forth with specificity what the representations were, when they were made, by whom they were made, and to whom they were made. *Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 432 N.E.2d 1009.

In the present case, neither party disputes that the claim of fraud against plaintiffs by the third-party brokers in the primary suit was striken for failure to state a cause of action, and defendant's motion to dismiss merely incorporates the striken complaint. Similarly, defendant sets forth as "affirmative matter avoiding the legal effect of or defeating the claim" the stricken breach of contract claim in the primary suit.

■■ We cannot condone such a Quixotic exercise in jousting with windmills. Mere allusion to stricken charges of fraud or breach of contract in a prior suit without further specific, particular and certain allegations in defendant's motion to dismiss, is not sufficient to avoid the legal effect of the claim.

Since we consider plaintiffs' complaint to state a cause of action and the "allegations" of the motion to dismiss not to be proper for consideration in a section 2—619 motion, we reverse the judgment dismissing the case and remand to the trial court for further proceedings consistent with the views expressed herein.

Reversed and remanded.

MEJDA, P.J., and SULLIVAN, J., concur.