NORTHWEST FEDERAL SAVINGS & LOAN ASSOCIATION OF CHICAGO, Plaintiff, *v.* SHELLY WEISBERG *et al.*, Defendants.—(PURITAN FINANCE CORPORATION, Counterplaintiff-Appellee, *v.* SHELLY WEISBERG *et al.*, Counterdefendants-Appellants.)

First District (2nd Division)    No. 80-275

Opinion filed June 16, 1981.—Rehearing denied July 14, 1981.

Abraham N. Goldman, of Chicago, for appellants.

Martin F. Hauselman, of Chicago (Patricia O'Brien Norum, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This cause was initiated by a mortgagee seeking foreclosure of its first mortgage secured by a single-family residence. Counterplaintiff Puritan Finance Corporation (Puritan) filed the instant claim against the residence's owners, counterdefendants Shelly and Tarelyn Weisberg, seeking foreclosure of its second mortgage which is secured by the same property. The circuit court granted summary judgment for Puritan and against the Weisbergs on all issues raised in the counterclaim. The Weisbergs' motion to vacate that order was subsequently denied. They appeal from both dispositions contending their pleadings raise genuine issues of material fact precluding entry of summary judgment.

The pleadings indicate that after the initial complaint seeking foreclosure was filed, Puritan filed a verified counterclaim for foreclosure on its second mortgage. Puritan attached to its counterclaim a corporate installment note and a copy of its real estate mortgage as evidence of the Weisbergs' debt. The note evidences a $17,493 obligation incurred by Shelly Weisberg Associates, Inc. (SWA). Shelly Weisberg signed the note as president of SWA and his wife, Tarelyn, signed as secretary. The reverse side of the note includes a personal guaranty agreement signed by each of the Weisbergs. The guaranty indicates it is secured by the mortgage. The mortgage recites the indebtedness evidenced by the note. The Weisbergs initialed a change in the mortgage and also signed that document. Puritan's counterclaim alleges the Weisbergs are in default of the second mortgage with a principal balance due of $12,395.48.[1]

The Weisbergs' amended answer and counterclaim, entered upon the record *nunc pro tunc* June 15, 1979,[2] alleges the note, second mortgage and guaranty were procured by fraud and violate the State usury statute (Ill. Rev. Stat. 1975, ch. 74, pars. 4, 6) and the Federal Truth in Lending Act (15 U.S.C. §1601 *et seq.* (1976)). Deposition testimony by Shelly Weisberg disclosed he and his family lived in a house other than the residence securing the instant mortgage. He and Tarelyn are the sole owners, directors and officers of SWA, a manufacturers' representative

---

[1] The guaranty contains a standard clause permitting Puritan to enforce the guaranty against the Weisbergs without first filing proceedings against the corporate maker, SWA.

[2] Pursuant to this court's order of March 3, 1981, the circuit court conducted a hearing to determine whether the Weisbergs' amended answer and counterclaim was timely filed with that court. That court found the instant pleading was served upon Puritan and considered by the court prior to entry of summary judgment for Puritan. Because the pleading's absence from the record was due to clerical error, the pleading was entered upon the record *nunc pro tunc* June 15, 1979.

corporation. Shelly Weisberg wanted financing to complete construction of a women's apparel showroom at his place of business. The construction costs were estimated at about $15,000. SWA had accumulated no assets during its 10-year existence. The Weisbergs originally sought financing for the showroom at their local bank. After the bank refused to loan funds in addition to those the Weisbergs had previously borrowed, an officer at the bank recommended Puritan as an alternate source of financing. The Weisbergs were contacted by William Zimmerman of Puritan. He obtained credit information from them and thereafter arranged financing through Puritan.

On October 19, 1976, the Weisbergs met at Zimmerman's office to sign the papers necessary for the transaction. After an hour the Weisbergs left with a $10,000 check to the order of the Weisbergs and their local bank. When the Weisbergs presented the check to the local bank it issued two other checks. One $6,000 check was issued to SWA and the local bank. The proceeds from that check were used to satisfy an unrelated debt and, as a consequence, retire the local bank's lien on the instant real estate. The other check was issued to SWA in the amount of $4,000.

Puritan received monthly payments on the corporate note for two years. Payments were made by checks drawn on SWA's account. Thereafter payments stopped.

## I

The Weisbergs contend their amended answer and counterclaim raises four issues of material fact precluding entry of summary judgment for Puritan. They argue first that the note, mortgage, and guaranty were procured by fraud.

A motion for summary judgment should be granted "if the pleadings, depositions, admissions and affidavits on file reveal that there is no genuine issue as to any material fact * * *." (*Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1.) When considering a motion for summary judgment, a court must construe the pleadings strictly against the movant and liberally in favor of the opponent. (*Presto Manufacturing Co. v. Formetal Engineering Co.* (1977), 46 Ill. App. 3d 7, 10, 360 N.E.2d 510.) However, a "court need not strain to adduce some remote factual possibility that will defeat the motion. [Citation.]" (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 145, 407 N.E.2d 1031.) Therefore, to preclude entry of summary judgment upon Puritan's otherwise adequate foreclosure claim, the Weisbergs must allege sufficient affirmative matter to constitute a *prima facie* defense.

■■ A *prima facie* claim of fraud is established by allegations that the wrongdoer knowingly misrepresented a material fact for the purpose of inducing the claimant to act, that the claimant reasonably believed the

misrepresentation to be true, and that he detrimentally relied upon it. (*Roda v. Berko* (1948), 401 Ill. 335, 339-40, 81 N.E.2d 912; *Goetz v. Avildsen Tool & Machines, Inc.* (1980), 82 Ill. App. 3d 1054, 1065, 403 N.E.2d 555, *appeal denied* (1980), 81 Ill. 2d 591; see generally *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 48, 390 N.E.2d 393.) Furthermore, these allegations must be pleaded with specificity, particularity, and certainty. *Goetz v. Avildsen Tool & Machines, Inc.*

The essence of the Weisberg allegation is that Puritan, through its president, William Zimmerman, misrepresented the Weisbergs' obligations under the note and guaranty. They claim they were told by Zimmerman that "[w]e signed corporate but he would like us to sign personally and we never have to worry about it because they weren't going to bother us anyways * * *." The Weisbergs also assert they "didn't know [they] guaranteed [the note] personally" because they trusted Zimmerman and they read none of the papers they signed.

Shelly Weisberg's deposition transcript[3] reveals other statements, however, which we believe dilute the above allegations. During his deposition he stated that he provided Zimmerman with a legal description of the instant real estate and that he and his wife "were aware [they] were signing a second mortgage." In fact, in previous loan transactions between SWA and their local bank, the Weisbergs "always had to sign everything personally." Shelly Weisberg also stated, "It was like us borrowing at all times." Puritan's attorney then engaged in the following exchange with him:

"Q: So, you were accustomed to guarantying notes before you entered into this transaction with Puritan?

A: Guaranteed our lease, too, at the Apparel Center the same way. The corporation didn't have any money * * *.
* * *

Q: Is your answer to th[e] question yes, that the loan to the corporation would not be given unless it was guaranteed by you and your wife?

A: Definitely."

■■ When the pleadings are construed within the context of these and other deposition statements, we believe the Weisbergs fail to allege a *prima facie* defense of fraudulent misrepresentation. The deposition transcript makes clear that the Weisbergs knew the loan was contingent upon their agreement to guaranty the obligation. They guaranteed several SWA loans previously. The deposition also reveals Shelly Weisberg

---

[3] Both Puritan and the Weisbergs have relied upon the deposition-transcript to support their respective positions in the circuit court and this court.

appreciated the significance of a guaranty. Everyone concerned with the transaction knew SWA had no cash. On this record their bald pleading allegations of misrepresentation and ignorance are insufficient, as a matter of law, to satisfy the requisites that a claimant reasonably believed the alleged misrepresentation to be true and that he relied upon it. (See *Roda v. Berko*; cf. *Allensworth v. Ben Franklin Savings & Loan Association* (1979), 71 Ill. App. 3d 1041, 1044, 389 N.E.2d 684 (negligent failure to read a contract generally precludes right to rely upon misrepresentation as to its terms).) We, therefore, conclude that the evidence presented in support of and in opposition to the Weisbergs' allegation of fraud is insufficient to raise a genuine issue of material fact precluding summary judgment.

## II

The Weisbergs also contend entry of summary judgment was improper where they allege Puritan is guilty of usury. They allege the instant loan was actually extended to them as individuals. Since the interest charged on the debt equaled 15% per annum, the Weisbergs claim Puritan illegally charged in excess of the 8% per annum rate then permitted under the Illinois Interest Act (Ill. Rev. Stat. 1975, ch. 74, par. 4). The Weisbergs allege that a greater part of the loan proceeds were used for purposes other than construction of the SWA apparel showroom. They conclude that the loan was not to a corporation, that it was not for a business purpose, and that it therefore charged a usurious interest rate.

Section 4 of the Interest Act sets forth the general lawful interest rate. That section also provides that it is lawful to charge any rate of interest with respect to loans to, *inter alia*, corporations or businesses. A "business" is defined as "a commercial or industrial enterprise which is carried on for the purpose of investment or profit, * * *." (Ill. Rev. Stat. 1975, ch. 74, par. 4(c).) Thus, a corporation or business cannot raise the defense of usury.

■■ It is of no consequence here whether this loan was to SWA as a corporate entity or to SWA as the Weisbergs' business alter ego. The defense of usury is unavailable to the corporate maker, SWA. The Weisbergs signed individually as guarantors of SWA's obligation,[4] "a not unusual situation" (*Verson v. Hardt* (1969), 107 Ill. App. 2d 480, 484, 246 N.E.2d 461). Since the defense of usury is personal and unavailable to the

---

[4] The Weisbergs argue on appeal that they were co-makers and not guarantors for the loan. They rely on *Grove v. Chicago Title & Trust Co.* (1960), 25 Ill. App. 2d 402, 166 N.E.2d 630, *appeal denied* (1960), 19 Ill. 2d 625, which is clearly neither on point nor analogous. The construction of the instant guaranty is not in issue. The guaranty agreement is clear and unambiguous. In the absence of adequate allegations of fraud, that agreement is not subject to reformation.

corporate maker, it is unavailable to the Weisbergs as guarantors. (*Verson v. Hardt.*) Moreover, Shelly Weisberg states unequivocally in his deposition that the purpose of the loan was to finance construction of SWA's showroom. This is a business purpose. The Weisbergs' allegation that they applied a portion of the loan proceeds to satisfy other debts does not change that purpose here.[5] If, as alleged, the instant loan was somehow contingent upon retirement of other debt, the clear, direct and ultimate purpose for satisfying other obligations was to secure business financing. The pleadings disclose no other allegations which would bring the instant transaction without the Interest Act's exceptions. Accordingly, the general statutory provisions regulating the lawful rate of interest do not apply here, as a matter of law. The Weisbergs' claim of usury is not supported by the record.

## III

The Weisbergs also claim their amended answer and counterclaim adequately raises a Federal truth in lending cause barring entry of summary judgment. The Weisbergs' pleading alleges that their loan was used for consumer purposes, that it was secured by their residential real estate, and that Puritan failed to properly disclose both the effective annual percentage rate and security pursuant to the provisions of the Truth in Lending Act (15 U.S.C. §1601 *et seq.* (1976)).

■■ The disclosure provisions of the Truth in Lending Act do not apply to credit transactions involving extensions of credit for "business or commercial purposes." (15 U.S.C. §1603(1) (1976).) Review of the record here compels us to conclude the instant transaction was at least primarily for business purposes. (See part II.) Accordingly, the Truth in Lending Act's requirements are inapplicable, as a matter of law. (See, *e.g., First National Bank of Belleville v. Skidis* (1980), 82 Ill. App. 3d 602, 603-04, 403 N.E.2d 56 (where loan contingent upon satisfaction of other debt, partial application of loan proceeds to satisfy said debt does not alter commercial purpose of loan).) In addition, the deposition statements of Shelly Weisberg indicate the instant real estate was used as income property at the time of the loan transaction. The property was not the Weisbergs' residence. But even if the property were their residence, use of the property as security in a commercial loan transaction would not change the purpose of the loan. (See *Poe v. First National Bank* (5th Cir. 1979), 597 F.2d 895, 896; accord, *Toy National Bank v. McGarr* (Iowa 1979), 286

---

[5] The Weisbergs used 60% of their loan proceeds to retire other debt and satisfy a prior lien upon the property subject to the instant proceedings. Their reply brief suggests the loan transaction was styled as a business loan for the purpose of evading the usury statute. No additional facts are alleged in support of that conclusion of law. The instant pleadings are insufficient to create a genuine issue of material fact regarding the contention.

N.W.2d 376, 378.) Thus, the Weisbergs fail to allege sufficient facts to raise a *prima facie* Truth in Lending Act claim.

## IV

■■ Lastly, the Weisbergs allege Puritan's foreclosure claim is barred because Puritan's conduct justifies application of the equitable doctrine of "unclean hands." This allegation is completely dependent upon the adequacy of the Weisbergs' other claims. Because the Weisbergs have failed to adequately allege facts in support of those other claims, those claims are inadequate to support this allegation. Additionally, "the issue of unclean hands is not aimed at benefitting the party asserting it as a defense, but rather is for the protection of courts * * * in keeping with public policy and its application is within the discretion of the courts. [Citations.]" (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 53.) The instant pleadings are inadequate to raise a fact issue material to resolution of the cause.

In accordance with the aforesaid reasons, we conclude the Weisbergs fail to set forth sufficient allegations of fact to bar entry of summary judgment for Puritan on its foreclosure claim. Accordingly, the orders of the circuit court of Cook County granting summary judgment for Puritan and denying the Weisbergs' motion to vacate that judgment are affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.