WESTBANK, Plaintiff-Appellant and Cross-Appellee, v. MARIE V. MAURER, Defendant-Appellee and Cross-Appellant (Gage Park Savings & Loan Association *et al.*, Defendants).

Second District   No. 2—95—0560

Opinion filed December 22, 1995.

554

Don A. Norton, of Downers Grove, for appellant.

Joseph F. Vosicky, Jr., of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Westbank, appeals an order of the circuit court of Du Page County which granted summary judgment in favor of defendant, Marie V. Maurer. The order rescinded a mortgage held by Westbank on a residence owned by defendant. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

On June 7, 1991, plaintiff refinanced an existing $135,000 loan which had been made to Michael G. Sebela & Associates, Ltd., and Michael G. Sebela, personally. Michael G. Sebela & Associates, Ltd., was an Illinois corporation engaged in the business of providing legal services, and Michael G. Sebela was an attorney licensed to practice law in the State of Illinois. Mr. Sebela has subsequently been disbarred as a result of embezzling client funds for his personal use.

The original $135,000 loan had been secured by two certificates of deposit which were held by Joseph Kosik, Mr. Sebela's uncle. However, Mr. Kosik became uncomfortable with the pledge and requested that plaintiff switch the collateral on the loan to a second mortgage secured by Mr. Sebela's personal residence. However, after further research, plaintiff discovered that Mr. Sebela's personal residence was clouded by an outstanding mechanics lien which had been filed against the property. It appears that Mr. Sebela was able to convince his wife's elderly grandmother, defendant in the case at bar, to assist him by pledging her personal residence as security for the loan. Knowing of Mr. Sebela's extremely weak credit condition, plaintiff compiled little if any documentation concerning defendant's involvement prior to approving and processing the loan. No one warned defendant of the significance of her acts.

Subsequently, on June 7, 1991, plaintiff released one of Mr. Kosik's certificates of deposit in the amount of $100,000 and rewrote Mr. Sebela's loan into two separate loans. The first loan was for $35,000 and was secured by an assignment of a trust certificate in the amount of $50,000. This loan is not pertinent to the case at bar. The second loan was for $100,000 and was secured by a second mortgage on defendant's home. The $100,000 loan provided for monthly payments of $1,349.35 and was due to mature in one year.

In connection with the $100,000 loan, defendant signed the mortgage and hypothecation which granted plaintiff a mortgage on her residence. Defendant is the grandmother of Karen Sebela, Mr. Sebela's wife. At the time the mortgage was executed, defendant was 83 years old. She is now approximately 88 years old. Defendant did not sign the documents in the presence of the loan officer despite the fact that the officer wrongfully notarized the documents as if she had

been in his presence. It would appear that plaintiff compiled little if any documentation regarding defendant when it granted Mr. Sebela his loan. Plaintiff further did not provide defendant with any of the disclosures enumerated in section 1635 of the Truth in Lending Act (Act) (15 U.S.C.A. § 1635 (West 1982)).

Mr. Sebela, however, signed a waiver of his disclosure rights pursuant to the Act. Defendant executed no such waiver, nor was any evidence presented to indicate that plaintiff ever requested that defendant sign such a waiver. (See Official Staff Commentary to Regulation Z, 46 Fed. Reg. 50,288 (1981) (noting that each party entitled to rescind a transaction must sign a waiver form in order for the waiver to be effective).) Nothing in the record would indicate that defendant was doing anything other than helping her granddaughter's husband in a personal situation by executing the mortgage documents.

In exchange for defendant signing the mortgage document, Mr. and Mrs. Sebela granted defendant a mortgage on their home in the amount of $100,000. However, the mortgage was not recorded until November 18, 1991. In the interim, the Sebelas obtained another loan from Ford Consumer Finance for approximately $63,000 and executed another mortgage on their residence which was recorded ahead of defendant's mortgage. Thus, defendant's mortgage on the Sebela residence was in a third position behind two previously recorded mortgages.

Plaintiff subsequently was investigated by the Federal Deposit Insurance Corporation (FDIC) and a cease and desist order was issued. The order found that plaintiff had engaged in hazardous lending practices and ordered that plaintiff take immediate steps to remedy those situations. The FDIC and the Illinois Commissioner of Banks and Trust Companies Examination Report both specifically criticized the Sebela loan for improper documentation and failure to follow proper banking procedures.

On December 11, 1992, Mr. and Mrs. Sebela filed a chapter 7 bankruptcy proceeding, and Mr. Sebela's liability on the subject loan was discharged on July 1, 1993. On July 26, 1993, Mr. Sebela also filed a bankruptcy proceeding on behalf of Michael G. Sebela & Associates. The record, however, fails to indicate whether the corporation also received a bankruptcy discharge.

On October 22, 1992, plaintiff filed the present foreclosure action against defendant. On April 12, 1993, Mr. Sebela filed an appearance for Michael Sebela, Karen M. Sebela, Marie V. Maurer (defendant), and Michael G. Sebela & Associates. On May 25, 1993, Mr. Sebela filed an answer and affirmative defenses on behalf of defendant, himself, and his law firm.

On August 23, 1993, Mr. Sebela initiated a chapter 11 bankruptcy proceeding on behalf of defendant. Subsequently, the bankruptcy court determined that there existed a conflict of interest between defendant and Mr. Sebela and required that defendant secure independent counsel. Defendant retained Joseph Vosicky to represent her in the bankruptcy proceeding. Subsequently, Mr. Vosicky filed a motion to withdraw defendant's answer in the case at bar on the basis that Mr. Sebela filed the original answer without consulting with defendant in any manner. The court allowed the motion, and on August 15, 1994, defendant filed a new answer and affirmative defense. In her affirmative defense, defendant alleged that: (1) she had not been properly joined as a defendant in the action; (2) the mortgage and hypothecation agreements were voidable in point of law; and (3) plaintiff has expended unnecessary time and expense in prosecuting the matter.

On February 1, 1995, defendant filed a motion for summary judgment seeking the rescission of the mortgage. In her motion for summary judgment, defendant argued that pursuant to the Act, she had a right to rescind the mortgage due to plaintiff's failure to provide her with proper notice documenting her rescission rights. (See 15 U.S.C.A. § 1635 (West 1982).) After hearing argument on the issue, the trial court granted defendant's motion and ordered that the mortgage entered into between plaintiff and defendant be rescinded. Further, in order to put plaintiff in the same position it was in before the mortgage was entered into, the court ordered that the mortgage in the amount of $100,000 held by defendant on the Sebelas' residence be assigned to plaintiff. The trial court further granted defendant statutory damages of $1,000 (15 U.S.C.A. § 1640 (West Supp. 1995)) but denied her request for attorney fees.

This timely appeal follows. On appeal, plaintiff argues that the trial court erred in granting summary judgment in favor of defendant, alleging that defendant did not have a right to rescind the mortgage because the loan transaction was for business and not consumer credit. Defendant cross-appeals, arguing that the trial court abused its discretion in denying her motion for attorney fees.

## LOAN PURPOSE

We turn first to plaintiff's argument. Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Leschinski v. Forest City Steel Erectors* (1993), 243 Ill. App. 3d 124, 127; 735 ILCS 5/2—1005(c) (West 1994).) In ruling on

the motion, the court is required to construe all evidentiary material strictly against the movant and liberally in favor of the respondent. *Pagano v. Occidental Chemical Corp.* (1994), 257 Ill. App. 3d 905, 908.

The propriety of an order granting summary judgment is a question of law, and, as such, we review such orders *de novo.* (*Pagano,* 257 Ill. App. 3d at 909.) If, after reviewing the pleadings and evidentiary material before the trial court, the reviewing court determines that a material issue of fact exists or that the summary judgment was based on an erroneous interpretation of the law, then reversal is warranted. *Pagano,* 257 Ill. App. 3d at 909.

■ In her motion for summary judgment, defendant argued she was entitled to rescind the mortgage based on plaintiff's failure to provide timely notice of her rescission rights as required by the Act. (15 U.S.C.A. § 1635(a) (West 1982).) There is no dispute that plaintiff did not provide defendant with the disclosures enumerated in section 1635. Section 1635 provides:

> "[I]n the case of any *consumer credit transaction* \*\*\* in which a security interest \*\*\* is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section \*\*\*." (Emphasis added.) 15 U.S.C.A. § 1635(a) (West 1982).

■ The purpose of the Act is to promote the informed use of credit by requiring lenders to make meaningful disclosure of the debtor's rights and obligations in a form easily understood by the debtor. (See *Conrad v. Smith* (1986), 42 Wash. App. 559, 562, 712 P.2d 866, 867.) Thus, the Act is designed to ensure that a consumer is provided with meaningful disclosure of credit terms, and, where a creditor fails to make such disclosures, the consumer is provided with the remedy of rescission. (*Tower v. Moss* (5th Cir. 1980), 625 F.2d 1161, 1164.) However, the provisions of the Act do not apply where the transaction involves extensions of credit for business or commercial purposes; rather, the Act only applies to those transactions which involve consumer credit. *Moss,* 625 F.2d at 1164-66; 15 U.S.C.A. § 1603(1) (West 1982).

●3 In determining whether the transaction was primarily consumer or commercial in nature, we are required to examine the transaction as a whole. (See *Moss,* 625 F.2d at 1166.) Such a determination is a question of fact. (See *Conrad,* 42 Wash. App. at 561, 712 P.2d at 867.) Merely because the credit was secured by defendant's personal residence does not, by itself, transform the transaction into

one for consumer credit. (*Sherrill v. Verde Capital Corp.* (11th Cir. 1983), 719 F.2d 364, 367-68.) In determining whether the Act is applicable to a transaction, the Act must be liberally construed in favor of the debtor. See *Rowland v. Magna Millikin Bank* (C.D. Ill. 1992), 812 F. Supp. 875, 878.

Several courts have been called on to determine whether credit to finance certain acquisitions is primarily for consumer or business purposes. (See, *e.g., Thorns v. Sundance Properties* (9th Cir. 1984), 726 F.2d 1417, 1418-19.) In making such determinations, these courts have considered the following factors: (1) the relationship of the borrower's primary occupation to the acquisition; (2) the degree to which the borrower will personally manage the acquisition; (3) the ratio of income from the acquisition to the total income of the borrower; (4) the size of the transaction; and (5) the borrower's statement as to the purpose of the loan. (*Thorns*, 726 F.2d at 1419.) However, in a situation such as the one in the case at bar, where loan proceeds are placed in a corporate account and used to purchase both personal and business items, coupled with the fact that the party seeking rescission is a third party to the transaction, the above factors are not helpful.

■ Thus, in situations such as occurred in the case at bar, the court should consider different factors in determining whether the transaction in question was for consumer or business credit. In formulating a set of factors which courts should consider, we must remain cognizant that the Act is to be liberally construed in favor of the consumer (see *Anderson v. Lester* (La. App. 1980), 382 So. 2d 1019, 1021), and, thus, we will err on the side of the obligor in determining whether a transaction is for business or consumer credit.

## FACTOR I

The relationship between the parties is an important factor which a court should consider in determining the purpose of the transaction. In the case at bar, both plaintiff and Mr. Sebela had a close relationship. Mr. Sebela had previously taken out loans with plaintiff, and Mr. Sebela had an office in the same building as plaintiff. Defendant, however, was a third party to the transaction, with no previous relationship with plaintiff. She received none of the loan proceeds and had no connection to Mr. Sebela's business. Defendant was merely an elderly grandmother assisting her granddaughter and the granddaughter's husband with no involvement in or knowledge of the fact that the loan was alleged to be for business purposes. As such, where there is no evidence of a pecuniary relationship between the third party and the business to which the loan proceeds were al-

legedly given, coupled with the existence of a close relationship between the party receiving the funds and the creditor, such a factor strongly supports a finding that the loan, as it relates to the third party, is for consumer purposes.

## FACTOR II

Another factor which supports the fact that the loan was made for a consumer purpose is plaintiff's actions surrounding the subject transaction. It is undisputed that plaintiff incorrectly documented Mr. Sebela's loan. Further, plaintiff compiled little documentation regarding defendant prior to taking the security interest in her personal residence. Lastly, plaintiff's agent wrongfully notarized defendant's signature on the mortgage document and hypothecation agreement without ever having personally seen defendant. Where a creditor has failed to execute properly and document a transaction, such a factor also strongly supports a finding that a transaction is for consumer credit and, thus, is subject to the disclosures mandated by the Act.

## FACTOR III

A factor which supports plaintiff's argument that the transaction was for business credit is the designation which the creditor and Mr. Sebela placed on the transaction. (See *Conrad*, 42 Wash. App. at 565, 712 P.2d at 869; Official Staff Commentary to Regulation Z, 46 Fed. Reg. 50,297 (1981).) In the case at bar, it is undisputed that both Mr. Sebela and plaintiff classified the loan as a business loan. As to both Mr. Sebela and plaintiff, such a factor would be highly dispositive of the purpose of the loan. However, especially where there is a third party to the transaction who has not been personally involved in either the transaction or the business for which the credit is allegedly procured, this factor is entitled to less weight for the reason that we should not allow two parties to a transaction to circumvent the provisions of the Act at the expense of a third party. Thus, the mere fact that both plaintiff and Mr. Sebela designated the loan as being for business credit would not defeat defendant's right to rescind the transaction in light of the aforementioned factors.

## FACTOR IV

Another factor the court should consider is the actual purpose for which the loan proceeds were utilized. (See *Anderson*, 382 So. 2d at 1022.) If the loan was used by the debtor to pay personal obligations, then such a finding would support a conclusion that the loan was for consumer credit.

In the case at bar, there is a dispute as to the manner in which

the loan proceeds were utilized, with plaintiff arguing that the funds were utilized by Mr. Sebela for business obligations and defendant arguing that the funds were utilized by Mr. Sebela for personal obligations. Evidence was presented which would indicate that Mr. Sebela utilized his corporate account as a personal checking account, paying for improvements completed on his personal residence with checks drawn on this corporate account.

As was noted above, in reviewing the grant of summary judgment, we are required to construe the evidence strictly against the movant and liberally in favor of respondent. (*Pagano*, 257 Ill. App. 3d at 909.) However, not every question of fact is sufficient to defeat a motion for summary judgment. (*Macmor Mortgage Corp. v. Exchange National Bank* (1975), 30 Ill. App. 3d 734, 740.) The factual issue must be material, and facts which would not affect the outcome of a party's case, regardless of how sharply those facts are controverted, will not warrant the denial of a motion for summary judgment. *Alexander v. Standard Oil Co.* (1981), 97 Ill. App. 3d 809, 814.

In the case at bar, even in the event that the finder of fact were to find that Mr. Sebela utilized the loan proceeds to pay business obligations, coupled with the fact that both plaintiff and Mr. Sebela classified the loan as being for business credit, such findings would be insufficient to support a conclusion that the transaction was incurred for business credit as to defendant. Defendant was a third party to the transaction in the case at bar. She had no relationship to Mr. Sebela's failed law practice and had no relationship with plaintiff prior to the subject transaction. Plaintiff failed to document properly the loan in question and wrongfully notarized documents which purported to grant plaintiff a security interest in defendant's personal residence. As such, because the first two factors so overwhelmingly support the court's conclusion that the transaction was for consumer credit as to defendant, the court did not err in granting summary judgment in favor of defendant.

## RESCISSION

■ We must next address plaintiff's argument that defendant's right to rescind the subject transaction has expired. Section 1635 of the Act provides that a person's right of rescission expires three years after the consummation of the transaction. (15 U.S.C.A. § 1635(f) (West 1982).) The mortgage on defendant's residence was executed on June 7, 1991, which plaintiff argues commenced the three-year time limit. Plaintiff filed its suit to foreclose the mortgage on October 22, 1992. On August 15, 1994, defendant filed her answer in which she pleaded an affirmative defense which alleged that the

mortgage and hypothecation agreement were voidable in point of law. This was the first point in time where it could be argued that defendant raised her right to rescind the mortgage. Defendant did not specifically indicate that she wished to rescind the mortgage until she filed her motion for summary judgment on February 1, 1995. Both dates are beyond the three-year time limit imposed by section 1635(f) if the time limit commenced on June 7, 1991. 15 U.S.C.A. § 1635(f) (West 1982).

Defendant argues, however, that plaintiff's failure to raise this issue in the trial court has resulted in the issue being waived. (See *Jeanblanc v. Sweet* (1994), 260 Ill. App. 3d 249, 254.) Plaintiff responds that the three-year limit is a limitation on the exercise of the right itself and is therefore jurisdictional and can be raised for the first time on appeal.

The issue of subject matter jurisdiction cannot be waived, and the lack of subject matter jurisdiction may be raised at any time and in any court. (*Malmberg v. Smith* (1993), 241 Ill. App. 3d 428, 430.) However, the three-year limit contained in section 1635 of the Act is a statute of limitations and, thus, could be waived by plaintiff's failure to raise the issue before the trial court. (See *Dawe v. Merchants Mortgage & Trust Corp.* (Colo. 1984), 683 P.2d 796, 799; *Federal Deposit Insurance Corp. v. Ablin* (1988), 177 Ill. App. 3d 390, 395.) However, waiver is a limitation on the parties and not on the court, and, therefore, in the interest of justice, we will consider plaintiff's argument. See *Glassie v. Papergraphics, Inc.* (1993), 248 Ill. App. 3d 621, 625.

Plaintiff argues that the three-year statute of limitations expired on June 7, 1994. However, defendant argues that the Act provides an exception to the three-year time limit. Section 1635(f) provides that where an agency entitled to enforce the provisions of the Act institutes proceedings to enforce the provisions of section 1635 and the agency finds a violation of this section, the obligor's right of rescission shall expire one year after the conclusion of such proceedings. (15 U.S.C.A. § 1635(f) (West 1982).) Defendant argues that the FDIC's actions involving plaintiff invoke the exception contained in section 1635(f) (15 U.S.C.A. § 1635(f) (West 1982)).

Defendant argues that the FDIC is an agency empowered to enforce the provisions of the Act pursuant to section 1607(a) (15 U.S.C.A. § 1607(a) (West Supp. 1995)). The FDIC issued a cease and desist order against plaintiff on March 25, 1992, and there is no evidence that said order has been lifted, and, as such, defendant argues that her right of rescission has not yet expired.

Section 1635(f) states that the exception only applies where the

applicable agency is enforcing the provisions of the rescission section. (15 U.S.C.A. § 1635(f) (West 1982).) No evidence has been presented which would indicate that the FDIC initiated any action against plaintiff for a violation of the disclosure requirements of the Act. Rather, the FDIC initiated the action against plaintiff for engaging in hazardous lending and lax collection procedures and failing to obtain proper loan documentation. We find that such actions were not contemplated by Congress when it enacted the one-year exception to the three-year time limit on bringing a rescission action.

However, defendant's failure to bring an action for rescission within three years following the consummation of the loan in question is not fatal to her action. Defendant's claim is not barred because it was pleaded in the form of an affirmative defense. There is a well-recognized distinction between the maintenance of an original action and the assertion of a defense in response to an action filed by a creditor. (See *Dawe*, 683 P.2d at 799.) Further, section 13—207 of the Code of Civil Procedure provides that a defendant may plead a claim or setoff otherwise barred by a statute of limitations to any action the cause of which was owned by the plaintiff. (735 ILCS 5/13—207 (West 1994).) As such, because defendant raised her claim for rescission of the mortgage in response to plaintiff's foreclosure action, she was not barred by the three-year limitation contained in section 1635(f) of the Act. (*Ablin*, 177 Ill. App. 3d at 395; *Dawe*, 683 P.2d at 799.) To hold otherwise would allow a creditor to wait three years to file its suit and thereby defeat the purpose of the Act.

Incidently, we note that defendant never received a copy of the mortgage or loan documents until defendant was served with a summons on October 22, 1992. Thus, the transaction may not have been consummated until the date she actually received the documents, and the three-year period of limitations contained in section 1635(f) of the Act (15 U.S.C.A. § 1635(f) (West 1982)) may not have expired until October 22, 1995. However, we need not necessarily determine when the limitations period expired because we have already determined that defendant was able to raise her claim as a response to plaintiff's foreclosure action.

■ Plaintiff argues that defendant's failure to file a counterclaim requesting the rescission of the mortgage precluded the court from granting the relief which she requested for the first time in her motion for summary judgment. Defendant argues that plaintiff is precluded from arguing this issue on appeal as it was never raised before the trial court and is therefore waived. We agree, noting that all defects and pleadings not objected to in the trial court are deemed waived. See 735 ILCS 5/2—612(c) (West 1994).

■ Plaintiff next argues that the remedy of rescission is not available to defendant in that defendant is unable to place plaintiff in the position it would have been in had the transaction never been consummated. Plaintiff argues that defendant is unable to return the loan proceeds which were given to Mr. Sebela in exchange for the rescission of plaintiff's mortgage on defendant's residence. Once again, defendant notes that this issue was waived as plaintiff never raised this issue before the trial court. (See *Jeanblanc*, 260 Ill. App. 3d at 254.) Waiver, however, is a limitation on the parties and not a limitation on the court. (*American Federation of State, County & Municipal Employees, Council 31 v. County of Cook* (1991), 145 Ill. 2d 475, 480.) In the interest of justice, we will address this argument.

Plaintiff argues that upon rescission of the mortgage, defendant would be required to tender to it $100,000, which amount represents the loan amount which was extended to Mr. Sebela as a result of the subject transaction. Plaintiff relies upon *Powers v. Sims & Levin* (4th Cir. 1976), 542 F.2d 1216, in support of its argument that where rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced.

Rescission, however, is an equitable doctrine, and there is nothing in the statutory provision of the right of rescission which limits the power of a court of equity to circumscribe the right of rescission to avoid the perpetration of stark inequity. (*Aquino v. Public Finance Consumer Discount Co.* (E.D. Pa. 1985), 606 F. Supp. 504, 508.) In *Powers*, the debtors indicated that they would not tender to the creditor all the property they received from the transaction, therefore leading the court to conclude that rescission would not be proper. (*Powers*, 542 F.2d at 1220.) In *Aquino*, the obligor indicated that she would return all the property which she received in the transaction. (*Aquino*, 606 F. Supp. at 508.) The parties merely disagreed as to how to characterize the property which was received in the transaction. (*Aquino*, 606 F. Supp. at 508.) The *Aquino* court ordered the transaction rescinded and ordered the debtor to return the property which she received in consideration for her execution of the security interest. *Aquino*, 606 F. Supp. at 508.

In the case at bar, the court ordered defendant to return to plaintiff all property which she received in the subject transaction, which property consisted of her mortgage on Mr. Sebela's residence in the amount of $100,000. Defendant is perfectly willing to transfer to plaintiff the mortgage she held on the Sebela residence. While we recognize that this mortgage is in third position behind two other mortgages, the trial court did not abuse its discretion in formulating

such a remedy. As noted above, a court in equity may modify the regular rules of rescission so as to avoid the perpetration of inequity. (*Aquino*, 606 F. Supp. at 508-09.) Thus, the trial court did not err in ordering the mortgage rescinded in exchange for defendant's assignment of the mortgage which she holds on Mr. Sebela's residence.

■ Lastly, plaintiff argues that rescission is only available to the person to whom credit is extended and, as such, was not an available remedy for defendant. Defendant argues that the issue is waived due to plaintiff's failure to raise this issue before the trial court. As noted above, waiver is a limitation on the parties and not on the court (*Council 31*, 145 Ill. 2d at 480), and, thus, we will address this argument.

Plaintiff argues that section 1635 of the Act provides that rescission is only available to the person to whom credit is extended. (15 U.S.C.A. § 1635 (West 1982).) However, section 226.15 of the Code of Federal Regulations provides that every consumer whose ownership interest is or will be subject to a security interest shall have the right to rescind the transaction. (12 C.F.R. § 226.15 (1995).) As such, defendant has a right to rescind the transaction because her primary residence is subject to a security interest held by plaintiff.

## CROSS-APPEAL

■ Defendant cross-appeals the order which denied her request for reimbursement of reasonable attorney fees. Section 1640 of the Act provides that where a party is found to have a right of rescission under section 1635 of the Act, the creditor is liable for the costs of the action as well as reasonable attorney fees as determined by the court. (15 U.S.C.A. § 1640(a)(3) (West Supp. 1995).) Because we have determined that defendant had a right to rescind the mortgage, she was entitled to reasonable attorney fees. Thus, the trial court erred in denying her motion for attorney fees.

Thus, the order of the circuit court of Du Page County which granted summary judgment in favor of defendant, rescinded the mortgage between defendant and plaintiff, and granted defendant statutory damages in the amount of $1,000 is affirmed. The order of the circuit court of Du Page County which denied defendant's request for attorney fees is reversed, and the cause is remanded so that defendant may file a petition seeking reasonable attorney fees.

Affirmed in part; reversed in part and remanded for further proceedings consistent with this order.

McLAREN, P.J., and GEIGER, J., concur.