# Illinois Official Reports

## Appellate Court

---

### *People's Bank of Arlington Heights v. Atlas*, 2015 IL App (1st) 133775

---

| | |
|---|---|
| Appellate Court Caption | PEOPLE'S BANK OF ARLINGTON HEIGHTS, Plaintiff-Appellee, v. MARSHALL ATLAS and ARLENE ATLAS, Defendants-Appellants (The Village of Skokie, Unknown Tenants, and Nonrecord Claimants, Defendants). |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-3775 |
| Filed | June 18, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-43251; the Hon. Moshe Jacobius, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John S. Xydakis, of Law Office of John S. Xydakis, of Chicago, for appellants.<br><br>Stephen L. Golan and Caren A. Lederer, both of Golan & Christie LLP, of Chicago, for appellee. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1     This is a mortgage foreclosure case in which the principal defenses raised by the homeowner arise under the federal Truth in Lending Act (TILA) (15 U.S.C. §§ 1601 *et seq.* (2006)). In this appeal, we must decide whether plaintiff, People's Bank of Arlington Heights (People's Bank), was required to comply with certain disclosure provisions of TILA before foreclosing on a home owned by defendants Marshall Atlas and Arlene Atlas. The trial court found TILA inapplicable, and thus granted summary judgment in favor of People's Bank, because the loan secured by the mortgage on defendants' home was a commercial loan, not a consumer loan, and was thus exempt from TILA's disclosure requirements. We agree with the trial court and affirm its judgment.

¶ 2                                                    I. BACKGROUND

¶ 3     The loan and foreclosure at issue in this case were preceded by some factual background that we will briefly detail. Defendant Marshall Atlas was the owner of Salta Group, Inc. (Salta), and his wife Arlene Atlas was an owner of HBZ, Inc. (HBZ). Both Salta and HBZ were in the business of purchasing tax certificates–delinquent real estate taxes sold by the county in which the subject property was located. To fund their operations, Salta and HBZ took out various loans from People's Bank. Marshall personally guaranteed the loans to Salta, and Arlene personally guaranteed the loans to HBZ. In May 2010, People's Bank renewed Salta's revolving line of credit in the amount of $2.3 million. (It renewed a similar revolving draw loan to HBZ as well, but that loan is not pertinent to this appeal.) The Salta line of credit was secured by a security interest in the tax certificates owned by Salta.

¶ 4     In June 2011, People's Bank became concerned that the Salta line of credit was under-collateralized because, it alleges, the tax certificates were less valuable than they had been represented to be, and because People's Bank believed that Marshall had pledged those tax certificates to secure loans from other sources, as well.

¶ 5     To satisfy People's Bank's concern and to pay down the Salta line of credit, Marshall and Arlene personally borrowed $960,000 from People's Bank and executed a first mortgage on their residence to secure the loan. The proceeds of that loan were not given to Marshall or Arlene; instead, they were transferred directly and credited to the Salta line of credit. It is this $960,000 loan that is the subject of this appeal.

¶ 6     The first page of the note for this loan indicated that the loan's purpose was "Consumer." One paragraph of the note, captioned "Loan Purpose," stated, "The purpose of this Loan is to provide a shareholder loan to Salta Group, Inc."

¶ 7     The note also contained a paragraph entitled, "Federal Truth-In-Lending Disclosures," which included information regarding the loan's interest rate, the estimated monthly payments, the amount financed, and the total payments defendants would make.

¶ 8     The note included two documents entitled, "Notice of Right of Rescission." These notices said that they "relate[d] to a consumer credit account dated July 26, 2011" between People's Bank and defendants, Marshall and Arlene. The notices both contained the following provisions:

"**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is July 26, 2011; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel." (Emphasis in original.)

The notices provided that defendants could exercise their rights to rescind the loan by notifying People's Bank in writing.

¶ 9 Each defendant, Marshall and Arlene, signed a separate notice and dated each notice July 26, 2011. Above their signatures, the notices read, "The undersigned acknowledges receipt of 2 copies of this Notice." Defendants claim, however, that despite their signature agreeing to this proposition, in fact they never received two copies (or even a single copy) of that notice.

¶ 10 On December 16, 2011, after defendants allegedly failed to make payments on the loan for several months, People's Bank filed a complaint seeking to foreclose on the mortgage.

¶ 11 In their answer to People's Bank's complaint, defendants agreed that the loan was used to provide additional collateral to Salta. Defendants' answer raised several arguments regarding TILA, among them that People's Bank violated TILA by failing to provide both defendants with two copies of the notice of defendants' right to rescind the loan. Because they were not given notice of their rescission rights, defendants argued, their right to rescind remained available to them, and they exercised that right in August 2012, when they mailed a notice of rescission to People's Bank. Because they had now validly rescinded that loan, defendants argued, the foreclosure action based on that loan was now void.

¶ 12 On September 20, 2012, People's Bank filed a motion for summary judgment. With respect to defendants' TILA claim, People's Bank argued that TILA did not apply to the loan because it was made for business or commercial purposes. People's Bank also argued that, even if TILA applied, "the Bank gave all the required disclosures" and defendants had acknowledged, in writing, that they had received notices of their rights to rescission.

¶ 13 The record does not include a copy of defendants' response to People's Bank's motion for summary judgment. However, the record does include an affidavit from Arlene that supplemented defendants' response to the motion for summary judgment. Arlene's affidavit stated that she and Marshall signed the loan documents at a restaurant on July 26, 2011, but the officers of People's Bank present for that meeting "took the documents and left the restaurant without providing Marshall or [Arlene] copies of any of the documents." Arlene attested that she never received copies of the documents she signed on July 26, 2011.

¶ 14 Arlene's affidavit also said that Marshall received a letter from People's Bank, dated October 4, 2011, "which purported to include all documents signed on July 26, 2011." Arlene said that the letter included "several hundred" pages and that Marshall placed the letter in a secured filing cabinet and did not remove it until August 15, 2012, when Marshall brought them to his and Arlene's attorney "for review." According to Arlene's affidavit, she and Marshall sent written notice of their rescission of the transaction on August 23, 2012. She received a return receipt for their written notice that was dated August 27, 2012.

¶ 15 Before ruling on the motion for summary judgment, the trial court agreed to conduct an evidentiary hearing on the question of whether Marshall and Arlene received adequate delivery of the TILA disclosures, namely, the notice of rescission rights. We have no transcript of this hearing. Nor do we have any written findings of fact from the court. All that we know is that, as a result of this evidentiary hearing, on December 10, 2012, the trial court denied People's Bank's motion for summary judgment without prejudice "for the reasons stated from the bench." The trial court also granted defendants leave to file a counterclaim or other responsive pleading.

¶ 16 Defendants did file a counterclaim and affirmative defenses which, among other things, reiterated their TILA arguments, most notably the failure of People's Bank to provide them with two copies each of the notice of rescission rights.

¶ 17 People's Bank filed a motion to reconsider the denial of summary judgment. People's Bank acknowledged that the trial court had found that a question of fact existed as to whether Marshall and Arlene were given their required two copies each of the notice of rescission rights. But People's Bank argued that this disputed issue of fact was not *material* because "the mortgage was given to secure an unquestionably *commercial* loan" to which TILA did not apply. (Emphasis in original.) People's Bank acknowledged that it "wrote the Loan as a 'consumer' transaction" and "followed all the procedures for a consumer loan" but argued that none of that changed the fact that defendants used the proceeds of the loan for business purposes.

¶ 18 From what we can discern through gaps in the record, it appears that People's Bank's argument ultimately carried the day with the trial court. The court allowed People's Bank to file an amended motion for summary judgment and, this time, granted it. The record does not contain a copy of that amended motion, nor does the order granting summary judgment provide any written reasons why it was granted.

¶ 19 On October 28, 2013, the trial court confirmed the judicial sale of defendants' residence. Defendants appeal.

## II. ANALYSIS

¶ 21 We are reviewing a grant of summary judgment. We are doing so without having the stated basis in the record for the trial court's ruling, without a copy of the written (amended) motion for summary judgment, and without a transcript or bystander's report of any hearing on the motion. But both parties focus on the sole issue of whether TILA governs this transaction, and that is consistent with the motion to reconsider filed by People's Bank after summary judgment was initially denied, with leave to file the amended motion. In any event, even if for some reason the trial court based its order on some other ground, this is the only one before us, and we may affirm a grant of summary judgment on any basis appearing in the record, " 'whether or not the [circuit] court relied on that basis or its reasoning was correct.' " *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 21 (quoting *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 26).

¶ 22 We review a grant of summary judgment *de novo*. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). Summary judgment is proper if, from all evidence available from the record, we are convinced that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id*.

¶ 23    If TILA applies to this transaction, as defendants argue, then People's Bank was required under federal law and regulations to provide each borrower two copies of a notice that they have the right to rescind the loan within three business days of receiving the notice. 15 U.S.C. § 1635(a) (2006) (TILA's requirement of notice of rescission); 12 C.F.R. § 226.23(b)(1) (2006) (regulation implementing TILA that provides that two copies of notice be given to each borrower). Where a lender fails to make the necessary disclosures under TILA, the borrower can exercise his or her right to rescind at any time within three years of the loan's consummation. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). If defendants are correct and TILA applies to this action, then we must vacate the grant of summary judgment and remand this cause, because even though People's Bank claims that it did give the required two notices to both Marshall and Arlene, and even though each of them signed a document acknowledging such receipt, even People's Bank concedes that this is a disputed question of fact at this stage of the proceedings. See *Hall*, 208 Ill. 2d at 328 (existence of genuine issue of material fact precludes summary judgment).

¶ 24    As indicated above, TILA does not apply to loans made for business or commercial purposes. 15 U.S.C. § 1603(1) (2006). It only applies to "consumer" credit transactions, which are defined as transactions "in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h) (2006). Marshall and Arlene are obviously "natural person[s]" under TILA, leaving the question whether the "money *** which [was] the subject of the transaction [was] primarily for personal, family, or household purposes." *Id.*

¶ 25    People's Bank contends that TILA does not apply because the proceeds of the loan were used for a business purpose: paying down loans that People's Bank had made to one of defendants' businesses, Salta. Defendants, on the other hand, claim it was a consumer loan governed by TILA, noting that the note and mortgage are designated in various places as "consumer" in nature, and they contain "Federal Truth-in-Lending Disclosures" and a "Notice of Right of Rescission," which are characteristic of a TILA transaction.

¶ 26    We begin with basic principles drawn from decisions in Illinois, of which there are a few, as well as those across the country. First, in deciding whether a loan was made for consumer or business purposes, no single factor is dispositive, and no bright-line rule applies. Rather, we consider the transaction as a whole. *Westbank v. Maurer*, 276 Ill. App. 3d 553, 559 (1995); *Shames-Yeakel v. Citizens Financial Bank*, 677 F. Supp. 2d 994, 1002 (N.D. Ill. 2009) (in determining whether particular transaction was primarily consumer or business in nature within meaning of TILA, courts look to "entire surrounding factual circumstances" (internal quotation marks omitted)); *Mauro v. Countrywide Home Loans, Inc.*, 727 F. Supp. 2d 145, 153 (E.D.N.Y. 2010) (under TILA, " '[w]hether an investment loan is for a personal or a business purpose requires a case by case analysis' " (quoting *Thorns v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir. 1984))).

¶ 27    Thus, the fact that a debtor's personal residence was used to secure the loan does not automatically render the transaction a consumer loan. *Maurer*, 276 Ill. App. 3d at 559-60; *Northwest Federal Savings & Loan Ass'n of Chicago v. Weisberg*, 97 Ill. App. 3d 470, 475 (1981); *Poe v. First National Bank of DeKalb County*, 597 F.2d 895, 896 (5th Cir. 1979); *Toy National Bank of Sioux City v. McGarr*, 286 N.W.2d 376, 378 (Iowa 1979) ("Not every loan transaction which results in a security interest in the debtor's residence is subject to" TILA.).

¶ 28       Likewise, the fact "[t]hat the documents relevant to this transaction label it as 'consumer' is not dispositive" in making our determination. *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir. 1999); see also *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2013 WL 6388443, at *6 (N.D. Tex. Dec. 5, 2013), *aff'd sub nom. Garcia v. Primary Financial Services*, No. 14-10012, 2015 WL 3407403 (5th Cir. May 28, 2015) ("Although the documents memorializing the transaction are relevant, these are not dispositive."). To the contrary, the form of the transaction is far less important than "the substance of the transaction and the borrower's purpose in obtaining the loan." *Riviere*, 184 F.3d at 462; see *Shames-Yeakel*, 677 F. Supp. 2d at 1002 (courts conducting TILA analysis look to " 'the substance rather than the form' " of the transaction (quoting *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 727 (7th Cir. 2004), quoting *Clark v. Rent-It Corp.*, 685 F.2d 245, 248 (8th Cir. 1982))). Thus, we will consider the underlying object and purpose of the loan–the substance, not the form–based on the information in the record.

¶ 29       With these principles in mind, it is clear to us that the loan in question was a commercial loan to which TILA does not apply. People's Bank and defendants had an ongoing business relationship, with People's Bank providing credit for defendants' businesses. People's Bank asserted that it extended defendants the loan at issue so that defendants could pay down Salta's line of credit, and it provided documentation demonstrating that this, in fact, was where the proceeds of the loan were applied. The note listed a similar purpose, stating, "The purpose of this Loan is to provide a shareholder loan to Salta ***."

¶ 30       To be sure, the note and mortgage contained the word "consumer" in various places and contained TILA disclosures that would only be necessary for a consumer loan. People's Bank does not, and could not, deny that the procedures it followed with respect to the loan were the same procedures it would follow for a consumer loan. But we will not exalt form over substance. It is undeniable, as the note indicated in its "purpose" section, that the purpose of this loan was to pay down a line of credit for a commercial entity, Salta, for its ongoing business affairs. It may have required Marshall and Arlene's personal residence as collateral, but that does not, by itself convert it into a consumer loan. *Maurer*, 276 Ill. App. 3d at 559-60; *Weisberg*, 97 Ill. App. 3d at 475; *Poe*, 597 F.2d at 896; *Toy*, 286 N.W.2d at 378. Nor does the fact that the loan was made to Arlene and Marshall, as opposed to the corporate entity, Salta. To fall under TILA, it is not enough to be a "natural person." One must be a "natural person" *and* the loan which is the subject of transaction must be for "personal, family, or household purposes." 15 U.S.C. § 1602(h) (2006). This loan was not used for personal, family, or household purposes.

¶ 31       We rely in part on our decision in *Weisberg*, where a husband and wife sought financing to build a showroom for their company, SWA. *Weisberg*, 97 Ill. App. 3d at 471-72. The bank made the loan out to the husband and wife, who signed personal guaranties and secured the loan with a mortgage on real estate they owned (but in which they did not reside). *Id.* The couple used a portion of the proceeds to pay off a lien on that real estate so that it could serve as collateral on the loan; they used the rest of the proceeds to construct the showroom for SWA. *Id.* at 472. After the company stopped making payments on the note, the bank foreclosed, and the husband and wife and SWA raised TILA defenses. *Id.* at 471, 475. This court rejected the TILA claims because the loan was primarily for a commercial purpose–the construction of a company showroom. *Id.* at 475. The fact that some of the money was used to pay off a lien on the collateralized real estate did not alter the court's opinion, because the purpose of retiring

that other debt was to secure financing for the showroom construction. *Id.* The court also pointed to the fact that the husband and wife did not reside in the mortgaged property but emphasized that, "even if the property were their residence, use of the property as security in a commercial loan transaction would not change the purpose of the loan." *Id.*

¶ 32 Marshall and Arlene rely on our decision in *Maurer*, but that case is easily distinguishable. In that case, the bank loaned money to an attorney to provide capital for his failing law firm. *Maurer*, 276 Ill. App. 3d at 556. The loan was secured with a mortgage on the home of the attorney's elderly grandmother-in-law. *Id.* The grandmother-in-law had no connection to the law firm, nor, the evidence showed, did she seem to have much of a connection to the loan itself. *Id.* at 560-61. The court cited evidence that the bank forged a notary on a bank form and that, in fact, the bank notary was not present when the elderly grandmother-in-law supposedly signed the mortgage. *Id.* at 561. Nor did the bank appear to do any legwork or due diligence regarding the securing of this mortgage. *Id.* Indeed, the Federal Deposit Insurance Corporation (FDIC) and the Illinois Commissioner of Banks and Trust Companies cited this transaction for improper documentation and failure to follow proper banking procedures, with the FDIC ultimately issuing a cease-and-desist order to the bank. *Id.* at 556-57.

¶ 33 In any event, the court found that, while the bank and the attorney appeared to be very close business partners, the grandmother-in-law had no such connection, derived no pecuniary benefit from the transaction, and was in every meaningful way a disinterested thirty party to the transaction. The court recognized that the transaction between the bank and the attorney could well be characterized as commercial in nature, but the court refused to find the loan outside the coverage of TILA as to the grandmother-in-law, because "we should not allow two parties to a transaction to circumvent the provision of [TILA] at the expense of a third party." *Id.* at 561.

¶ 34 Defendant analogizes Arlene in this case to the grandmother-in-law, arguing that Arlene did not own Salta and thus was a disinterested third party. That suggestion is entirely without merit. This case is miles away from *Maurer*, a very unique case as even that court recognized. See *id.* at 560. Running through that case was the clear suspicion that the attorney and the bank had acted in cahoots to take advantage of an elderly woman. Regardless, the grandmother-in-law had no connection whatsoever to the purposes of the loan. Here, even if technically Arlene did not have an ownership interest in Salta, she was married to the owner, and they co-owned the house they put up as collateral. We know nothing about the details of Marshall and Arlene's marriage, but we would assume that what was beneficial to Marshall was beneficial to Arlene–and if for some reason that notion is incorrect, defendants have not argued anything or cited to anything in the record to contradict that notion. Arlene's status is thus quite unlike the situation in *Maurer*, where the grandmother-in-law got nothing out of the deal whatsoever but a mortgage on her property. We see nothing in the record that remotely attenuates Arlene from the loan's purposes in the way that the grandmother was removed from the goings-on in *Maurer*.

¶ 35 Moreover, *Maurer* did not suggest, nor would we, that a bright-line rule exists whereby a loan is automatically deemed to be a "consumer" loan simply because one of the people who pledged their home as collateral does not own the business that uses the proceeds of the loan. For example, in *First National Bank of Belleville v. Skidis*, 82 Ill. App. 3d 602, 603 (1980), two different personal residences were mortgaged to obtain a loan so that a restaurant could pay off its debt to the IRS. One of the houses mortgaged belonged to the restaurant owners, but the

other belonged to a woman, Ms. Skidis, who "had no proprietary interest in the [restaurant] although she was employed there as a hostess." *Id*. The court nevertheless found the loan to be commercial in nature, and thus exempt from TILA, even though some of the loan proceeds were used to satisfy another lien on Ms. Skidis's home so that it could be used as collateral on this loan. *Id*. at 603-04. Thus, even though Ms. Skidis was technically a "third party" to the transaction, and even though she derived some personal benefit from the loan because it paid off a preexisting lien on her property, the loan was still commercial in nature, as it was "inspired to pay a business related debt to the [IRS]." *Id*. at 603.

¶ 36 If anything, Arlene's position in this case is more closely analogous to the restaurant hostess in *Skidis* than to the grandmother-in-law in *Maurer*. In this case as in *Skidis*, in a purely technical sense, one could argue that these women did not obtain a direct benefit from a loan that helped a company they did not own. But the hostess had an employment relationship with the restaurant owners, and Arlene obviously has a marital relationship with the owner of Salta. We find nothing in the record to suggest that this loan was anything other than a commercial loan, given for the purpose of satisfying some of the outstanding debt that Salta owed to People's Bank, nor do we find anything about Arlene's relationship to this transaction that would alter our analysis.

¶ 37 We hold that the purpose of the loan was commercial in nature. Thus, TILA does not apply to the subject transaction, and the issue of whether Arlene and Marshall each received their two copies of the notice of rescission rights is not material to the outcome of this case. The court's grant of summary judgment in favor of People's Bank is affirmed.

¶ 38                                                III. CONCLUSION

¶ 39 For the reasons stated, we affirm the judgment of the trial court awarding summary judgment to People's Bank.

¶ 40 Affirmed.